UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND D. JACKSON,<br><br>           Plaintiff,<br><br>      v.<br><br>STEVEN PLETCHER, et al.,<br><br>           Defendants. | No.  2: 11-cv-1157 JAM KJN P<br><br>FINDINGS AND RECOMMENDATIONS |

I. Introduction

Plaintiff is a state prisoner, proceeding through counsel, with a civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the court is the motion to dismiss for failure to exhaust administrative remedies filed on behalf of remaining defendants Osman, Bick and Aguilera.[1]  On June 27, 2012, a hearing was held regarding defendants' motion.  Paul Martin appeared on behalf of plaintiff.  Martha Stringer appeared on behalf of defendants.

After carefully considering the record, the undersigned recommends that defendants' motion be granted in part and denied in part.

////

---

[1] Plaintiff voluntarily dismissed the other named defendants. (ECF Nos. 119, 128, 185, 196.) Defendant Pletcher was dismissed pursuant to a settlement reached in a related state court action. (ECF No. 196.)

1

II. <u>Legal Standard for Exhaustion of Administrative Remedies</u>

The Prison Litigation Reform Act of 1995 ("PLRA") amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. <u>Porter v. Nussle</u>, 534 U.S. 516, 524 (2002). Exhaustion is a prerequisite for all prisoner suits regarding conditions of confinement, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. <u>Porter</u>, 534 U.S. at 532.

Exhaustion of all "available" remedies is mandatory; those remedies need not meet federal standards, nor must they be "plain, speedy and effective." <u>Id.</u> at 524; <u>Booth v. Churner</u>, 532 U.S. 731, 740 n.5 (2001). Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. <u>Booth</u>, 532 U.S. at 741. A prisoner "seeking only money damages must complete a prison administrative process that could provide some sort of relief on the complaint stated, but no money." <u>Id.</u> at 734. The fact that the administrative procedure cannot result in the particular form of relief requested by the prisoner does not excuse exhaustion because some sort of relief or responsive action may result from the grievance. <u>See</u> <u>Booth</u>, 532 U.S. at 737; <u>see</u> <u>also</u> <u>Porter</u>, 534 U.S. at 525 (purposes of exhaustion requirement include allowing prison to take responsive action, filtering out frivolous cases, and creating administrative records).

However, a prisoner need not exhaust further levels of review once he has either received all the remedies that are "available" at an intermediate level of review, or has been reliably informed by an administrator that no more remedies are available. <u>Brown v. Valoff</u>, 422 F.3d 926, 934-35 (9th Cir. 2005). Because there can be no absence of exhaustion unless some relief remains available, a movant claiming lack of exhaustion must demonstrate that pertinent relief remained available, whether at unexhausted levels or through awaiting the results of the relief already granted as a result of that process. <u>Brown</u>, 422 F.3d at 936-37.

////

2

As noted above, the PLRA requires proper exhaustion of administrative remedies. Woodford v. Ngo, 548 U.S. 81, 83-84 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91. Thus, compliance with prison grievance procedures is required by the PLRA to properly exhaust. Id. The PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." Id. at 83-84.

The State of California provides its prisoners the right to appeal administratively "any departmental decision, action, condition or policy which they can demonstrate as having an adverse effect upon their welfare." Cal. Code Regs. tit. 15, § 3084.1(a) (2010). It also provides them the right to file appeals alleging misconduct by correctional officers and officials. Id. at § 3084.1(e). In order to exhaust available administrative remedies within this system, a prisoner must proceed through several levels of appeal: (1) informal resolution, (2) formal written appeal on a 602 inmate appeal form, (3) second level appeal to the institution head or designee, and (4) third level appeal to the Director of the California Department of Corrections and Rehabilitation. Barry v. Ratelle, 985 F.Supp. 1235, 1237 (S.D. Cal. 1997) (citing Cal.Code Regs. tit. 15, § 3084.5). A final decision from the Director's level of review satisfies the exhaustion requirement under § 1997e(a). Id. at 1237-38.

Non-exhaustion under § 1997e(a) is an affirmative defense which should be brought by defendants in an unenumerated motion to dismiss under Federal Rule of Civil Procedure 12(b). Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). Moreover, the court may look beyond the pleadings to determine whether a plaintiff exhausted his administrative remedies. Id. at 1119-20.

Although exhaustion is mandatory, an inmate must only exhaust administrative remedies "as are available." 42 U.S.C. § 1997e(a). Under the Ninth Circuit law, exhaustion is excused when improper screening of grievances occurs. Sapp v. Kimbrell, 623 F.3d 813, 822 (9th Cir. 2010) (citing Nunez v. Duncan, 591 F.3d 1217, 1226 (9th Cir. 2010)). Sapp establishes that "improper screening of an inmate's administrative grievances renders administrative remedies

3

'effectively unavailable' such that exhaustion is not required under [§ 1997e(a)]." Id. at 823. If prison officials screen out an inmate's grievances or appeals for improper reasons, the inmate cannot pursue the necessary administrative process, and, consequently, his administrative remedies become "unavailable." Id.

III. Plaintiff's Claims

This action is proceeding on the second amended complaint filed May 21, 2012, as to remaining defendants Osman, Bick and Aguilera. (ECF No. 103-1.) Plaintiff alleges that he received inadequate medical care while housed at the California Medical Facility ("CMF"). Defendants are all employed as physicians at CMF.

Plaintiff alleges that he had problems with his nose which got worse in 2008. His symptoms included periodic unexplained bleeding, pain, nasal congestion, obstruction and discharge of mucoid debris. Plaintiff alleges that on or about October 7, 2008, he was seen by defendant Osman regarding his nose problems. Defendant Osman allegedly prescribed saline spray and had plaintiff apply Vaseline to the interior of his nose. Plaintiff's symptoms became worse. Plaintiff saw defendant Osman again on October 29, 2008, for his nose problems. Defendant Osman again prescribed saline spray and Vaseline.

On December 15, 2008, plaintiff filed an administrative appeal complaining about various matters, including the large hole, i.e., perforation, that was found in his nose by Dr. Hall, an otolaryngologist working on a contract basis at CMF, on May 21, 2008. Plaintiff requested a second opinion and that he be allowed to see an outside specialist. Plaintiff's request to see an outside specialist was denied, but he was again referred to Dr. Hall.

On January 28, 2009, plaintiff was seen by Dr. Hall who did not recommend any alternative treatment or surgery. Dr. Hall also did not authorize a biopsy. Dr. Andreasen advised plaintiff that he could see an outside consultant if he paid for it. Because plaintiff had no money, he could not see an outside consultant.

Plaintiff appealed the denial of his request to see an outside consultant. This second level appeal was granted. In accordance with granting this appeal, Dr. Hall authorized plaintiff to see a specialist at the University of California San Francisco ("UCSF"). Later, Dr. Hall changed his

4

1  mind and authorized a consult with Dr. Owens, an otolaryngologist practicing out of the Queen of
2  the Valley Hospital in Napa, California.  The referral papers, signed by defendant Aguilera,
3  requested a repair of the perforated septum.  No diagnostic tests, such as a biopsy, were
4  requested.
5       On April 7, 2009, Dr. Owens examined plaintiff.  Dr. Owens referred plaintiff back to
6  CMF with a finding that he was not confident in his ability to close a perforation of the size in
7  plaintiff's nose.  Dr. Owens suggested a referral to UCSF.  The referral to UCSF was later
8  authorized.
9       On April 7, 2009, plaintiff saw Nurse Jolly at CMF.  Plaintiff asked Nurse Jolly several
10 times to arrange a biopsy for him, but she ignored these requests.
11      On June 24, 2009, plaintiff was seen by Dr. Pletcher, an otolaryngologist, at UCSF.  Dr.
12 Pletcher stated that plaintiff's nose looked clean, prescribed a nasal spray with Vaseline, and sent
13 plaintiff back to CMF with no further recommendations.  No follow up visits were scheduled.  Dr.
14 Pletcher refused plaintiff's request for a biopsy or other diagnostic tests on his nose.
15      During the months following the examination by Dr. Pletcher, plaintiff's nose condition
16 deteriorated.  Plaintiff sent four letters to Dr. Pletcher on July 11, 2009, July 29, 2009, October
17 15, 2009, and November 5, 2009, detailing the problems with his nose and requesting a biopsy.
18 Plaintiff sent copies of these letters to defendants Aguilera and Bick.  Defendants Aguilera and
19 Bick ignored the requests in these letters.
20      On September 9, 2009, plaintiff was examined by Dr. Long, a contract physician at CMF.
21 Dr. Long examined plaintiff's nose and found that plaintiff may have early stage cancer in his
22 nose.
23      On September 23, 2009, and September 28, 2009, plaintiff sent Health Service Requests
24 to defendant Osman, stating that his nose condition may be cancerous.  Defendant Osman made
25 no effort to obtain a biopsy of plaintiff's nose.
26      Plaintiff's nose condition became so bad that in early 2010, defendant Aguilera approved
27 plaintiff to see Dr. Pletcher again.  On February 26, 2010, Dr. Pletcher examined plaintiff.  At that
28 time, a biopsy was done on plaintiff's septum, and the pathologic diagnosis was that he had "at

least" squamous cell carcinoma in situ. On March 2010, Dr. Pletcher was scheduled to perform surgery to remove the cancer. During this surgery, Dr. Pletcher discovered that the cancer had spread far wider than anticipated. Dr. Pletcher referred the matter to an associate, Dr. Ivan H. El-Sayed, who undertook a total rhinectomy of plaintiff's nose on March 24, 2010.

Plaintiff alleges that defendants violated his Eighth Amendment right to adequate medical care by ignoring his requests for diagnostic tests which would have determined the presence of cancer sooner.

IV. Discussion

    A. Background of Plaintiff's Administrative Appeals

Defendants state that on December 15, 2008, plaintiff submitted Appeal No. CMF-06-08-14086 requesting an evaluation of his nose by an outside specialist. (ECF No. 200-4 at 34.) In this appeal, plaintiff stated that he had a large vent in his nose which caused bleeding and obstructed his breathing. (Id.) Plaintiff stated that the ENT doctor and his primary care doctor both said that there was nothing they could do. (Id.) Plaintiff stated that his condition was rapidly worsening. (Id.) Plaintiff stated that he needed immediate surgery and/or a second opinion. (Id.) As relief, plaintiff requested to be seen by an outside specialist and to receive something to help his breathing and to stop the bleeding. (Id.)

On January 28, 2009, Dr. Andreasen partially granted Appeal No. CMF-06-08-14086. (Id. at 33.) In the response, Dr. Andreasen acknowledged that plaintiff was requesting immediate surgery and/or a second opinion. (Id.) Dr. Andreasen noted that plaintiff had been seen by Dr. Hall on January 28, 2009, who felt that no alternate treatment or surgery was recommended. (Id.) Dr. Andreasen also stated that plaintiff had the right to request "this procedure" at an outside consultant, but that plaintiff would be responsible for all associated costs. (Id.) Dr. Andreasen denied plaintiff's request for surgery, but granted the request for an outside consultant/second opinion, if plaintiff paid for it. (Id.)

Plaintiff filed a second level appeal in response to Dr. Andreasen's response to his first level appeal. (Id. at 32.) Plaintiff stated that a partially granted appeal did nothing for him. (Id.) Plaintiff stated that he had no money and that he required surgery. (Id.) He stated that his nose

1   bled and that he had serious breathing problems.  (Id.)

2   On May 19, 2009, Mary Lou Dunlap, Chief Deputy of Clinic Services, granted plaintiff's
3   second level appeal.  (Id. at 30.)  Ms. Dunlap stated that on April 2009, plaintiff was seen by the
4   Eyes, Ears, Nose and Throat ("EENT") Clinic for a follow up of his nasal bleeding, pending a
5   consultation with the UCSF EENT Clinic.  (Id.)  Ms. Dunlap stated that plaintiff's primary care
6   physician had informed him to continue his nasal gel pending approval of the UCSF EENT Clinic
7   for possible perforated nasal surgery.  (Id.)  Ms. Dunlap stated that plaintiff's request to have a
8   second opinion by a specialist for his nasal bleeding was granted as plaintiff had been approved
9   for consultation at the UCSF EENT Clinic.  (Id.)

10  Plaintiff did not file any more medical appeals between June 24, 2009, and March 25,
11  2010.  (Id. at 28.)

12  B.  Analysis

13  For purposes of the pending motion, the undersigned clarifies that plaintiff's claims can be
14  divided into two categories:  claims challenging his medical care prior to his June 24, 2009
15  examination by Dr. Pletcher and claims challenging his medical care after this examination.

16  Defendants argue that plaintiff failed to exhaust his administrative remedies because he
17  failed to file a Director's Level Appeal after grievance no. CMF 06-08-14086 was granted at the
18  second level of review.  Defendants state that the second level response to this appeal notified
19  plaintiff that if he was dissatisfied, he could have added data or reasons for requesting a
20  Director's Level Review.  The portions of the record defendants cite for this claim, i.e.,
21  defendants' Exhibit A, p.3, and Loney Declaration, p.11, do not contain this information.

22  Defendants also argue that if plaintiff thought he needed a biopsy, an issue which arose
23  after the grant of his appeal at the second level and the resulting consultation with Dr. Pletcher, he
24  should have filed an administrative appeal after his June 2009 consultation with Dr. Pletcher.
25  Defendants state that California regulations provide that an inmate may assert only issues or
26  related sets of issues in each appeal.  Cal. Code Regs., Tit. 15, § 3084.2(b)(1).

27  Defendants argue that it would not have been possible for prison officials to speculate
28  about what plaintiff thought he needed after he had been sent to three different otolaryngologists,

the last of whom was a specialist at UCSF. That specialist, Dr. Pletcher, did not think a biopsy was necessary. Defendants argue that if plaintiff was dissatisfied with Dr. Pletcher's opinion, he could hardly fault CMF officials for their lack of ability to read his mind. Because plaintiff did not alert officials to his belief in the need of a biopsy and his dissatisfaction with Dr. Pletcher's failure to order this procedure, defendants argue that they did not have an opportunity to respond to this concern.

In his opposition, plaintiff argues that he was not required to file further administrative grievances once he received the requested action when his second level appeal was granted, i.e., being seen by a medical specialist. Plaintiff argues that after his appeal was granted, he was under no further obligation to go back and file subsequent appeals every time he and his doctor had a disagreement. Plaintiff argues that after he saw the specialist, he had no actual knowledge that his treatment was medically inappropriate or deliberately indifferent until he was diagnosed with cancer.

For the following reasons, the undersigned finds that plaintiff failed to exhaust administrative remedies regarding his claims challenging the medical care he received from defendants after his June 24, 2009 examination by Dr. Pletcher. The undersigned agrees with plaintiff's argument that prisoners are not required to file and exhaust separate grievances each time they allegedly receive inadequate medical care for an ongoing condition. See Lewis v. Naku, 2007 WL 3046013, *5 (E.D.Cal. 2007). However, the primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation. Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009); accord Morton v. Hall, 599 F.3d 942, 946 (9th Cir. 2010).

The circumstances of the instant action are distinguishable from a case where a prisoner challenges medical care for an ongoing condition. In this case, plaintiff received the treatment he requested, i.e., to be seen by an outside specialist. By granting this grievance and sending plaintiff to an outside specialist, prison officials and defendants presumably and reasonably thought that plaintiff's grievance was resolved. Because plaintiff did not file a new grievance or appeal his original grievance to the next level, defendants had no notice that plaintiff was

dissatisfied with the treatment he received from the specialist.  By failing to file a grievance regarding his dissatisfaction with Dr. Pletcher's treatment and failure to perform a biopsy, plaintiff did not give prison officials and defendants an opportunity to respond to his concerns in the appropriate forum.

The undersigned also notes that the Ninth Circuit in Harvey v. Jordan, 605 F.3d 681 (9th Cir. 2010), the Ninth Circuit stated "[a]n inmate has no obligation to appeal from a grant of relief, or a partial grant that satisfies him, in order to exhaust his administrative remedies." Id. at 685.  In Harvey, the plaintiff (challenging due process relating to a prison disciplinary hearing) had requested a hearing with specific video tape evidence, or his disciplinary be dropped and his status restored.  The prison officials granted his first request, that he be given a hearing and access to the videotape.  See id.  This was the exact relief the plaintiff had requested, and the plaintiff therefore did not appeal. The issue, however, was that he did not receive the relief granted—the hearing with videotape—for over five months.  The Ninth Circuit determined that where a prisoner has been granted the relief requested, which was to his satisfaction, it is not his responsibility to ensure the prison officials actually provide that relief, even where the prisoner has set forth an alternative form of relief.  See id.

The issue addressed in Harvey involved a situation where a prisoner is granted satisfactory relief, and the prison officials fail to follow through with what has been promised.  See Harvey, 605 F.3d at 685.  The Ninth Circuit stated that "it is [not] the prisoner's responsibility to ensure that prison officials actually provide the relief that they have promised." Id. (citing Abney v. McGinnis, 380 F.3d 663, 669 (2d Cir. 2004)).  The instant case is distinguishable.  Here, plaintiff was granted the relief sought: an examination by an outside specialist.  If plaintiff had never been taken to the specialist, then the undersigned would find that he was not required to file additional grievances.  However, in the instant case, plaintiff was granted relief which was not satisfactory to him.  Thus, the situation the Ninth Circuit is concerned about, the never-ending cycle of exhaustion, is not present in this case.

////

////

9

Finally, the undersigned notes that plaintiff's alleged ability to write four letters to Dr. Pletcher requesting a nose biopsy undercuts his argument that he was excused from filing further grievances because he had no actual knowledge that his treatment was medically inappropriate. Thus, plaintiff could have filed a grievance demanding a biopsy much like he set forth in his letters.

Regarding plaintiff's claims challenging his medical care prior to the June 24, 2009 examination by Dr. Pletcher, the second amended complaint alleges that on October 7, 2008, and October 29, 2008, defendant Osman prescribed a nasal spray and Vaseline. (ECF No. 103-1 at 7.) The second amended complaint contains no other allegations against defendants alleging inadequate medical care prior to the June 24, 2009 examination by Dr. Pletcher.

Defendant Osman was plaintiff's primary care physician. Plaintiff's first level grievance stated that his primary care physician told him that there was nothing he could do about plaintiff's nose problems. (ECF No. 204 at 3.) Plaintiff requested to be seen by a specialist to determine what was causing the bleeding and his difficulty breathing. This grievance put defendant Osman on notice that plaintiff was complaining about the medical care he provided for plaintiff's nose.[2] Because this grievance was granted, plaintiff exhausted his administrative remedies as to his claim that defendant Osman provided inadequate medical care for his nose in October 2008.[3]

Accordingly, IT IS HEREBY RECOMMENDED that defendants' motion to dismiss (ECF No. 200) be denied as to plaintiff's claim that defendant Osman provided inadequate medical care in October 2008 and be granted in all other respects.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days

---

[2] The court's service order did not parse out the claims contained in the second amended complaint. In these findings and recommendations, the undersigned makes no finding regarding whether plaintiff has stated a colorable Eighth Amendment claim against defendant Osman based on his treatment of plaintiff's nose in October 2008.

[3] At the hearing on defendants' motion, defense counsel conceded that plaintiff's administrative grievance would exhaust his claim that defendant Osman provided inadequate medical care in October 2008.

after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

**Date:  <u>7/2/2013</u>**

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

jack1157.mtd

11